## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No. 1:10-cv-74 |
| ) | |
| v. ) | Judge _____ |
| ) | |
| EJL PROPERTIES, LLC, and ) | |
| DICK PLANTIER, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

The United States of America, by its undersigned counsel, at the request and with the authorization of a delegate of the Secretary of the Treasury and as directed by a delegate of the Attorney General, pursuant to 26 U.S.C. §§ 7401 and 7403, brings this Complaint: (1) to determine and adjudge that defendant EJL Properties, LLC holds title to certain real property as the nominee of defendant Dick Plantier; (2) in the alternative, to determine and adjudge that EJL Properties, LLC is liable for the tax assessments against Dick Plantier as his alter-ego; (3) in the alternative, to set aside the fraudulent transfer of certain real property and/or sale proceeds made by Dick Plantier; and (4) to foreclose federal tax liens against certain real property held in the name of EJL Properties, LLC, on any of the foregoing legal bases. For these purposes, the United States complains and alleges as follows:

### Jurisdiction and Parties

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1340, and 1345 and 26 U.S.C. §§ 7402 and 7403.

2. Defendant EJL Properties, LLC ("EJL Properties") has a place of business at 29 Beaver Lane, Bedford, New Hampshire 03110. EJL Properties is made a defendant pursuant to 26 U.S.C. § 7403, as it may claim an interest in the property upon which the United States seeks to foreclose its liens.

3. Defendant Dick Plantier ("Taxpayer") resides within the jurisdiction of this Court.

## Factual Background

### The Prior Action and Judgment against Taxpayer

4. The present action arises from certain unpaid federal tax assessments, penalties and interest owed by Taxpayer and his former spouse, Corrine Plantier (now known as Corrine Doe). The Taxpayer and the United States litigated the underlying tax assessments in the prior related action styled, United States of America v. Dick Plantier, et al., Civil No. 02-599-SM (D.N.H.) (the "Prior Action").

5. On November 29, 2004, this Court issued an order in the Prior Action granting the United States' cross-motion for summary judgment in the amount claimed by the United States (which was $712,229.60 as of November 30, 2002) and denying Taxpayer's motion for summary judgment.

6. On May 23, 2005, this Court issued judgment pursuant to the November 29, 2004 order. Taxpayer did not appeal the order or the judgment.

7. On May 30, 1988, a delegate of the Secretary of the Treasury of the United States made the original assessment against Taxpayer and his former wife for unpaid federal income taxes, interest and penalties relating to their federal income tax liability as returned on their return for the taxable year ending December 31, 1987. Through multiple payments made by or on behalf of Taxpayer over a period of several years, the original assessment has been paid in full.

8.      On October 31, 1991, a delegate of the Secretary of the Treasury of the United States made an additional assessment against Taxpayer and his former wife for unpaid federal income taxes, interest and penalties relating to their federal income tax liability for the taxable year ending December 31, 1987, followed on various dates by supplemental assessments of additional penalties. The total balance of these assessments is $243,864.86. As of November 30, 2002, the total accruals with respect to these assessments is $468,364.74. The total balance due as of November 30, 2002, is $ 712,229.60. As of February 2010, the total outstanding balance owed by Taxpayer exceeds $1 million.

**Taxpayer's Scheme to Conceal and Protect His Assets from Creditors**

9.      From at least 1993 to 1999, Taxpayer, while aware of his federal tax liabilities, engaged in a series of transactions and activities designed primarily to conceal and protect his assets from creditors, including specifically the United States. Some are described below.

10.     Throughout the time of the events described below, Taxpayer continued to receive notices of assessments issued by a delegate of the Secretary of the Treasury of the United States in connection with the 1987 federal tax liability. Also during this time, Taxpayer submitted Offers in Compromise to the Treasury, which were all rejected.

   **The PF Trust**

11.     On or about June 8, 1993, Taxpayer created the PF Trust by revocable trust instrument dated June 8, 1993.

12.     The original beneficiaries of the PF Trust were Taxpayer's then wife, Corrine Plantier, and their three children, Eric Jason Plantier, Jared Matthew Plantier, and Lisa Plantier. Corrine Plantier was divorced from Taxpayer in 1996 and is no longer a beneficiary of the PF Trust.

13.     Taxpayer served as trustee of the PF Trust from its inception until he resigned on or about April 10, 1995.  Taxpayer was succeeded as trustee first by Dianne Winn and then by Vaughn Tamzarian ("Tamzarian"), who continues to serve as trustee of the PF Trust.

14.     At all times, Taxpayer controlled and dominated the activities and operations of the PF Trust.  The successor trustees of the PF Trust lacked independence and always acted at Taxpayer's direction.

### The DRP Realty Trust

15.     On or about November 21, 1995, Taxpayer created the DRP Realty Trust by revocable trust instrument dated November 21, 1995.  Taxpayer directed Dianne Winn, as trustee of the PF Trust, to be the grantor of the DRP Realty Trust and to name his three children as the trust's beneficiaries.  The trust instrument named George P. Dickson as trustee of the DRP Realty Trust.

16.     Taxpayer and his then wife, Corrine Plantier, transferred much of their real property, personal property and business assets to the DRP Realty Trust.

17.     At all times, Taxpayer controlled and dominated the activities and operations of the DRP Realty Trust.  The trustee of the DRP Realty Trust lacked independence and always acted at Taxpayer's direction.

### The Stowell Road Property

18.     The Plantiers did not place their personal residence at 97 Stowell Road, Bedford, New Hampshire (the "Stowell Road Property") in trust.  Instead, Taxpayer decided to transfer the property to be held in the name of a straw man.

19.     On or about April 2, 1996, Corinne Plantier, who was or would soon be divorced from Taxpayer, conveyed her undivided one-half interest in the Stowell Road Property to Taxpayer.

20.     On June 10, 1996, Taxpayer conveyed record title of the Stowell Road Property, which constituted substantially all of his assets, to Tamzarian for no true consideration and without receiving reasonably equivalent value in exchange.

21.     Tamzarian took out two mortgages on the property and used the proceeds to discharge Taxpayer's prior mortgage liabilities.

22.     Taxpayer made the payments on Tamzarian's mortgages. Taxpayer and Tamzarian falsely referred to these payments as "rent."

23.     The net effect of transaction in 1996 was merely to get record title of the Stowell Road Property out of Taxpayer's name. Taxpayer retained all other incidents of ownership over the property and continued using it as his personal residence until it was sold and replaced in 1999. Tamzarian never resided at the Stowell Road Property.

24.     On or about March 30, 1999, Tamzarian, at Taxpayer's direction, sold the Stowell Road Property to an unrelated third party for $564,000.

25.     Immediately following the closing, Tamzarian transferred the sale proceeds to entities created and controlled by Taxpayer. Acting at Taxpayer's direction, Tamzarian deposited at least $300,000 in sale proceeds into DRP Realty Trust's bank account. Tamzarian then immediately withdrew those same funds from DRP Realty Trust's account and deposited them into PF Trust's bank account. PF Trust's trustee at the time was Tamzarian and its purported beneficiaries were Taxpayer's three children.

**EJL Properties, LLC and the Beaver Lane Property**

26.     On or about April 1, 1999, Taxpayer established EJL Properties specifically to purchase a new residence replacing the Stowell Road Property. Taxpayer has, at all times relevant, dominated and controlled the operations and activities of EJL Properties.

27.     EJL Properties is 99% owned by two of Taxpayer's children.

28.     Taxpayer's daughter, Lisa Campbell, *née* Plantier, owns 49.5% of EJL Properties and serves as managing member and registered agent.

29.     Taxpayer's son, Jared Matthew Plantier, owns 49.5% of EJL Properties.

30.     While the remaining 1% of EJL Properties is ostensibly owned by Susan Farah, she plays no substantive role within the entity.  Ms. Farah is a full-time nurse and has little knowledge of EJL Properties or its operations.  Ms. Farah agreed to be a 1% member and the Tax Matters Partner at the request of her husband, Scott Farah, who asked her to assist Taxpayer with "estate planning."

31.     At or about the time of formation, EJL Properties' members purportedly contributed money in or about the following amounts:

| Member | Initial Contribution |
|---|---:|
| Lisa Campbell | $128,725 |
| Jared Matthew Plantier | $128,725 |
| Susan Farah | $2,600 |
| Total | $260,050 |

32.     A substantial amount, if not all, of the contributions described in paragraph 31 were made with funds supplied by Taxpayer out of proceeds from the sale of the Stowell Road Property. Taxpayer directed these contributions be made for the purpose of acquiring certain real property consisting of a single-family home and land located at 29 Beaver Lane, Bedford, New Hampshire (the "Beaver Lane Property"), and to pay related expenses incurred for his benefit.

33. The Beaver Lane Property is legally described as follows:

> Two certain tracts of land with buildings thereon situated in the Town of Bedford, Hillsborough County, State of New Hampshire, the first tract being shown as Lots 66 and 18 on a plan entitled "Resubdivision Lots No. 18, 41, 42 & 66, Kilton Acres, Bedford, NH" dated November 15, 1978, prepared by John T. Hills Eng., Inc., approved by the Town of Bedford Planning Board on January 9, 1979, and recorded as Plan No. 11904 in the Hillsborough County Registry of Deeds. Said Lots 66 and 18 together containing 2.537 acres, more or less
>
> Together with the abutting parcel of land abutting the above described premises beginning at the Northeasterly Boundary of Beaver Lane; thence
>
> Along a curve having a radius of 25', along a delta of 55°46'45" a length of 24.34' and a traverse of 13.23 feet; thence
>
> N78°01'45"W a distance of 287.93' to a point; thence
>
> S03°08'43"E a distance of 53.60' to a point; thence
>
> N78°01'45" a distance of 267.41' to a point; thence
>
> Along a curve having a radius of 25', along a delta of 105°01'30" a length of 45.83" and a traverse of 32.53' to a point along the Southeasterly boundary of Beaver Lane; thence
>
> Along said Beaver Lane N03°03'15"W a distance of 100.57' to the point of beginning.
>
> Said abutting parcel containing 15,182 square feet, more or less.
>
> For Deed reference, see Warranty Deeds to the within named grantors dated January 17, 1979 and recorded in the Hillsborough County Registry of Deeds at Book 2668, Page 786, and dated June 13, 1978 and recorded in the said Registry at Book 2614, Page 153.

34. On or about April 2, 1999, EJL Properties acquired the Beaver Lane Property from an unrelated third party for $210,000. EJL Properties purchased the property outright without a mortgage.

35. All consideration paid by EJL Properties for the purchase of the Beaver Lane Property is traceable to the proceeds realized upon the disposition of the Stowell Road Property.

36. Taxpayer has enjoyed complete possession, dominion and control over the Beaver Lane Property, which he uses as his personal residence.

37. In April 2004, January 2006, and May 2007, and possibly at other times, Taxpayer alone appeared before the Town of Bedford Zoning Board of Adjustment in connection with the Beaver Lane Property. Taxpayer sought a zoning variance that would, among other things, permit him to subdivide the Beaver Lane Property into two separate parcels and develop the newly created second parcel for residential purposes. Taxpayer held himself out to the Town of Bedford Zoning Board of Adjustment as the purchaser of the Beaver Lane Property, which he stated he uses as his personal residence and formerly used in the operation of his business.

### Count I - To Foreclose the Federal Tax Liens - Nominee

38. The United States incorporates by reference the above allegations of paragraphs 1 through 37 as paragraph 38 of the Complaint.

39. Pursuant to Sections 6321 and 6322 of the Internal Revenue Code, 26 U.S.C. §§ 6321, and 6322, the amounts of the outstanding assessments described above in paragraph 8 are continuing liens as of the dates of assessments upon all property and rights to property of Taxpayer.

40. Taxpayer engaged in the above-described scheme, including each step, after federal tax liabilities had been assessed against him and in anticipation of accruing additions to the tax liabilities.

41. EJL Properties is the nominee of Taxpayer with respect to holding record title of the Beaver Lane Property.

42. As a result of the failure, neglect or refusal of Taxpayer and his former spouse to fully pay the above-described federal income taxes, interest and statutory additions assessed against

- 8 -

them following notices of assessments and demands for payment of the same, a delegate of the Secretary of the Treasury, on November 19, 2002, filed a notice of tax lien in the name of "EJL Properties LLC, as nominee for Dick and Corrine Plantier" with both the Hillsborough County Registry of Deeds and the Town Clerk of the Town of Bedford, New Hampshire.  The special nominee notice was filed in order to give record notice of the position of the Internal Revenue Service that the tax lien that had previously arose against Taxpayer attached to property in the name of EJL Properties.  The federal tax lien is superior to any claims or other interests of the defendants to or in property belonging to Taxpayer and EJL Properties, as nominee, including the Beaver Lane Property.

43.     Pursuant to Section 7403 of the Internal Revenue Code, 26 U.S.C. § 7403, the United States of America is entitled to judgment foreclosing the federal tax lien described above and a decree ordering the sale of the Beaver Lane Property, and distributing the proceeds of such sale in accordance with the parties' respective rights and priorities.

### Count II - To Foreclose the Federal Tax Liens - Alter Ego
### (Alternative to Count I)

44.     The United States incorporates by reference the above allegations of paragraphs 1 through 37, 39 through 40, and 42 as paragraph 44 of the Complaint.

45.     EJL Properties is the alter-ego of Taxpayer.  It has been controlled, directly and indirectly, and dominated by Taxpayer and its purpose is to assist Taxpayer in avoiding collection of his tax obligations to the Internal Revenue Service.

46.     Adherence to the fiction that EJL Properties exists separate from Taxpayer would, under the particular circumstances set forth above, sanction a fraud or promote an injustice in that (a) Taxpayer continuously used EJL Properties' only significant assets for his personal and

exclusive use; (b) Taxpayer's known assets, aside from those he transferred to EJL Properties, are insufficient to satisfy his liability to the United States; and (c) permitting Taxpayer to retain control and dominion of the Beaver Lane Property would unjustly deprive the United States of its right to collect federal tax liabilities owed by Taxpayer.

### Count III - To Avoid Fraudulent Transfer, Recover Substitute Proceeds
### (Alternative to Counts I and II)

47.     The United States incorporates by reference the above allegations of paragraphs 1 through 37 and 40 as paragraph 47 of the Complaint.

48.     The transfer by Taxpayer of the Stowell Road Property was voluntary and was done by Taxpayer with the actual intent to hinder, delay or defraud his creditors, both present and future, including the United States, and thus was fraudulent.  Alternatively, the transfer was constructively fraudulent as it was for no valuable consideration and left Taxpayer insolvent and unable to pay his tax debt.

49.     The subsequent purchase of the Beaver Lane Property was made by EJL Properties using funds traceable to proceeds from the sale of the fraudulently transferred Stowell Road Property, the transfer of which was void with respect to the United States, as creditor of Taxpayer.

50.     The United States is entitled to treat the Beaver Lane Property as the substituted proceeds of the Stowell Road Property or, alternatively, is entitled to have a constructive trust imposed on the Beaver Lane Property.

      **WHEREFORE**, the United States of America requests that this Court:

(a)     Determine and adjudge that EJL Properties, LLC holds title to the Beaver Lane Property as the nominee or agent of Dick Plantier, or in the alternative that EJL Properties, LLC is the alter-ego of Dick Plantier and therefore liable for the tax assessments against him,

and as such any interest held by EJL Properties, LLC in the Beaver Lane Property is subject to the valid federal tax lien of the United States;

(b) Determine and adjudge that the transfer of the Stowell Road Property by Dick Plantier to Vaughn Tamzarian was a fraudulent transfer and that the United States, as creditor of Dick Plantier, may avoid that fraudulent transfer and enforce the federal tax lien against any property directly or indirectly traceable to the proceeds of the sale of the Stowell Road Property, including the Beaver Lane Property;

(c) Order the foreclosure of the United States' tax lien upon the Beaver Lane Property described in this Complaint, and order said property be sold by a proper officer of this Court according to law, free and clear of all rights, titles, liens, claims, and interests of the parties hereto, and order proceeds of such sales be distributed, after the costs of the sale, to the United States and to other parties in accordance with the law; and

#
#
#
#
#
#
#
#
#
#

(d)     Award the United States its costs and such further relief as this Court deems just and

proper.

Dated: March 4, 2010                                JOHN A. DiCICCO
                                                    Acting Assistant Attorney General
                                                    Tax Division, U.S. Dept. of Justice

                                                     /s/ Nathan L. Strup
                                                    NATHAN L. STRUP
                                                    Trial Attorney, Tax Division
                                                    U.S. Department of Justice
                                                    P.O. Box 55, Ben Franklin Station
                                                    Washington, D.C. 20044
                                                    Telephone: (202) 514-6058
                                                    E-mail: Nathan.L.Strup@usdoj.gov

*Local Counsel:*

JOHN P. KACAVAS
United States Attorney
53 Pleasant Street
Concord, N.H. 03301
Telephone: (603) 225-1552